UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST TRUSTEE
SERVICES, PLLC.,

                    Plaintiff,                                 Civil No. 04-1892-HA

      v.

                                                OPINION AND
JAMES M. JACOBSON;                                ORDER
BRUCE BERGEY; CAROLYN
BERGEY; PRAIII, LLC;
DANIEL E. HEDEEN; and the
UNITED STATES OF AMERICA,

                    Defendants.

_____

HAGGERTY, Chief Judge:

      Plaintiff Northwest Trustee Services, PLLC (plaintiff) filed an interpleader action in

Washington County Circuit Court seeking an adjudication of claims of interest to surplus funds

arising from the sale of property at a trustee's sale.  In December 2004, that action was removed

to this court by defendant United States of America (the United States).  On March 31, 2005, the

OPINION AND ORDER- 1

court entered an Order of Default against defendants Jacobson, PRA III, LLC, and Daniel E.

Hedeen, and dismissed plaintiff with prejudice.  The court also authorized deposit of the surplus

funds into an interest-bearing account, discharged plaintiff from liability to disburse the funds,

and enjoined defendants from prosecuting any action against plaintiff.  On July 10, 2006, Bruce

and Carolyn Bergey (the Bergeys) and the United States filed cross-motions for summary

judgment.   Oral argument on these motions was heard on October 2, 2006.  For the following

reasons, the court grants the Bergeys' motion and denies the United States' motion.

## FACTUAL BACKGROUND

On August 23, 2002, James M. Jacobson (Jacobson) granted a trust deed (Long Beach

Trust Deed) in favor of Long Beach Mortgage Company for $198,800 on his home, which is

located in Tigard, Oregon (subject property).  On August 27, 2002, Jacobson granted a second

trust deed (Bergey Trust Deed) secured by the same subject property to the Bergeys for $49,700.

Both trust deeds were recorded with Washington County Recorder on August 29, 2002.  On July

28, 2003, the Internal Revenue Service (IRS) assessed Jacobson for federal income taxes for the

2000 and 2001 tax years.

On April 1, 2004, Jacobson conveyed his entire interest in the subject property, which

was subject to the Long Beach Trust Deed, by estoppel deed to the Bergeys in exchange for

"cancellation of the notes and the indebtedness secured by the mortgage or trust deed and the

surrender marked 'Paid in Full' to [Jacobson]."  The estoppel deed states that the "trust deed

being now subject to immediate foreclosure; and whereas [Jacobson], being unable to pay the

same, has requested [the Bergeys] to accept an absolute deed of conveyance of the property in

satisfaction of the indebtedness secured by the . . . trust deed . . . and [the Bergeys do] now

OPINION AND ORDER- 2

accede to that request."   The estoppel deed was also recorded in Washington County on April 1, 2004.

On April 5, 2004, First American Title Insurance Company provided a Trustee's Sale Guarantee identifying the Bergeys as "successors in interest" to Jacobson by virtue of the estoppel deed.  The Trustee's Sale Guarantee list of lien interests does not reflect any IRS tax lien or interest in the subject property by the United States.

On May 18, 2004, plaintiff issued and recorded a Notice of Default, which contained an election to sell the subject property to satisfy the Long Beach Trust Deed.  On June 2, 2004, the IRS filed a Notice of Federal Tax Lien with the Washington County Recorder for the subject property recording federal taxes owed by Jacobson.  The Notice included taxes due for the year 2000 in the amount of $6,363.14.

On October 8, 2004, the subject property was sold at a trustee's sale to satisfy the Long Beach Trust Deed.  Bruce Bergey purchased the subject property for $256,600 at the trustee's sale, of which $226,491.37 satisfied the costs of the sale and the amount owed under the Long Beach Trust Deed.  Plaintiff filed this action to determine who is entitled to receive the remaining $30,108.63.  The defendants are the interested parties.

On March 31, 2005, the court ordered plaintiff to place the surplus funds in an interest-bearing account, and awarded plaintiff attorney fees and costs in the amount of $1,190.00.  The remaining funds (surplus funds) are the subject of this action.

As noted, this court has entered a Default Judgment against Jacobson, PRA III, LLC, and Daniel E. Hedeen.  Thus, only the Bergeys and the United States continue to claim entitlement to the surplus funds.  The United States claims entitlement to the amount of Jacobson's total unpaid

OPINION AND ORDER- 3

taxes for tax years 2000 and 2001.   In its motion for summary judgment, the United States

asserted that Jacobson's outstanding balance was $11,268.73 as of July 31, 2006, representing

$2,284.75 from tax year 2000 and $8,983.98 from tax year 2001.  The Bergeys claim entitlement

to the full surplus amount from the trustee's sale, less plaintiff's attorney fees and costs.  Both the

Bergeys and the United States seek summary judgment, arguing that they are entitled to the

funds as a matter of law.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56©).  Summary judgment is not proper if material factual issues

exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings

and identify facts which show a genuine issue for trial.  *Id*. at 324.  Assuming that there has been

sufficient time for discovery, summary judgment should be entered against a "party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  *Id*. at 322.

Special rules of construction apply to evaluating summary judgment motions:  1) all

reasonable doubts as to the existence of genuine issues of material fact should be resolved

against the moving party;  2) all inferences to be drawn from the underlying facts must be

OPINION AND ORDER- 4

viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elect. Serv. v. Pac. Elect. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

When both parties file cross-motions for summary judgment, with both parties asserting that there are no uncontested issues of material fact, the court must nevertheless determine whether disputed issues of material fact are present before granting summary judgment. *Fair Housing Council of Riverside County, Inc. v. Riverside*, 249 F.3d 1132, 1136 (9th Cir. 2001). Courts must analyze whether the record on cross-motions for summary judgment contains genuine issues of material fact, even in those cases in which both parties believe that there are no material factual issues. *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1037 & n. 5 (9th Cir. 2000). The court must consider each summary judgment motion on its own merits and all appropriate evidentiary material identified and submitted in support of and in opposition to both motions before ruling on each of them. *Fair Housing Council of Riverside County, Inc.*, 249 F.3d at 1135.

## ANALYSIS

Oregon statutory law governs the disposition of proceeds from a trustee sale and provides:

> The trustee shall apply the proceeds of the trustee's sale as follows: (1) To the expenses of the sale, including the compensation of the trustee, and a reasonable charge by the attorney. (2) To the obligation secured by the trust deed. (3) To all persons having recorded liens subsequent to the interest of the trustee in the trust deed as their interests may appear in the order of their priority. (4) The surplus, if any, to the grantor of the trust deed or to the successor in interest of the grantor entitled to such surplus.

OPINION AND ORDER- 5

ORS § 86.765.

Parts (1) and (2) of § 86.765 have been satisfied because the expenses of the trustee's sale and the Long Beach Trust Deed have been paid.  The remaining issue is who is entitled to the remaining surplus under § 86.765(3) and/or § 86.765(4).

The Bergeys' interest in the subject property at the time of the trustee's sale must be resolved first.  Under  ORS § 86.765(4), the surplus is distributed to the grantor of the Long Beach Trust Deed (Jacobson), or to the "successor in interest of the grantor entitled to such surplus."   It is undisputed that the Bergeys are successors in interest with respect to the subject property.  The parties agree that the Bergeys acquired title to the subject property from Jacobson through the estoppel deed.  Furthermore, the Trustee's Sale Guarantee issued by First American Title identifies the Bergeys as "successors in interest" to Jacobson.

The United States contends that only Jacobson as grantor is entitled to the surplus, and the United States is entitled to satisfy Jacobson's tax debt out of those funds. The United States argues that § 86.765(4) requires a specific showing that the Bergeys are successors in interest on the Long Beach Trust Deed.  The United States contends that the Bergeys did not assume the Long Beach Trust Deed when they obtained the estoppel deed, were not liable to pay on the trust deed, and did not in fact make payments on the trust deed.

The United States cites no controlling authority to support its interpretation of § 86.765(4) as distinguishing between a successor to an obligation on a trust deed and the successor in interest in title to the property.  Instead, the United States contrasts § 86.765(4) with a California statute dealing with disbursement of surplus funds from a trustee's sale, which specifically provides:  "[T]rustee . . . shall distribute the proceeds of the trustee's sale . . . [t]o the

OPINION AND ORDER- 6

trustor or the trustor's successor in interest.  In the event that property is sold or transferred to

another, to the vested owner of record at the time of the trustee's sale."  Cal. Civ. C. §

2924k(a)(4).   The United States argues that the absence of similar language in ORS § 86.765(4)

establishes that persons who purchase the subject property from the trust grantor do not thereby

become successors in interest.

       This court rejects the United States' interpretation of  § 86.765(4).  First, the

interpretation is inconsistent with the ordinary meaning of successor in interest, which centers on

the rights attending ownership or a controlling interest in property.  The term "successor in

interest" is not defined statutorily.  However, Black's Law Dictionary defines the term as "[o]ne

who follows another in ownership or control of property.  A successor in interest retains the

same rights as the original owners, with no change in substance."  Black's Law Dictionary 1446

(7th ed. 1999).  This definition focuses on whether the Bergeys acquired Jacobson's *rights* with

respect to the subject property.  Accordingly, whether or not the Bergeys assumed Jacobson's

*obligations* under the Long Beach Trust Deed is irrelevant to whether they are successors of

interest.

       Second, the United States' interpretation is untenable in a practical sense because it

would result in few, if any, purchasers of property qualifying as successors in interest under §

86.765(4).  As the United States acknowledges, the Long Beach Trust Deed disallowed

assumption of the trust obligation without the trustee's consent.  Such provisions are common in

deeds of trust.  The United States fails to persuade the court that the Legislature would have

intended a definition of successor in interest so narrow that it renders the rule virtually

unnecessary.

OPINION AND ORDER- 7

The United States' comparison of § 86.765(4) with California's disbursement statute is unavailing. Although the Oregon Legislature could have expressly set out that successors in title to the subject property qualify as successors in interest, as the California legislature did, it was unnecessary to do so because the ordinary meaning of the terms compels that result. For these reasons, this court concludes that the Bergeys qualify as successors in interest under § 86.765(4).

Alternatively, the Bergeys claim they are entitled to the surplus under § 86.765(3) by virtue of the Bergey Trust Deed, which preceded the federal tax lien. The United States argues that the Bergeys' only interest in the subject property at the time of the trustee's sale arose from the estoppel deed, based on the doctrine of merger.

The doctrine of merger generally applies "where the title to the note, mortgage or trust deed and the title to the security become united in the same person." *Baxter v. Redevco, Inc*., 566 P.2d 501, 503 (Or. 1977). Here, title to the Bergey Trust Deed and title to the subject property, against which the Bergey Trust Deed was recorded, were united with the Bergeys when Jacobson conveyed his entire interest in the subject property by estoppel deed to the Bergeys to satisfy his debt to them.

The merger doctrine is "limited by the intent of the parties." *Baxter*, 566 P.2d at 503. Here, the language in the estoppel deed leaves no doubt that the parties intended the estoppel deed to extinguish or supplant the Bergey Trust Deed. The estoppel deed states that it was "an absolute deed of conveyance of the property in satisfaction of the indebtedness secured by the [Bergey Trust Deed] . . ." [ Decl. of Goud P. Maragani, Ex. E].

The Bergeys respond by asking the court to reinstate the Bergey Trust Deed and resulting priority, arguing that they would not have relinquished their priority from the Bergey Trust Deed

OPINION AND ORDER- 8

by accepting the estoppel deed if they had been aware of an intervening IRS lien. *South Beach Lumber Corp. v. Swank*, 311 P.2d 1018, 1022 (1957) (reinstating chattel mortgage where mortgagee released mortgage in ignorance of recorded intervening liens); *Holzmeyer v. Van Doren*, 139 P.2d 778, 784 (1943) (reinstating mortgage and canceling deed where mortgagee accepted absolute deed in satisfaction of mortgage in ignorance of intervening liens).

The United States claims that Treasury Regulations disallow reinstatement of the Bergey Trust Deed to displace a federal tax lien. 26 C.F.R. § 301.6323(h)-1(a)(2). This court need not reach the reinstatement question, since the Bergeys are entitled to the surplus as "successors in interest" under ORS § 86.765(4) as a matter of law.

However, the question remains whether the federal tax lien has priority over that interest. Federal law governs the relative priority of federal tax liens. *Feiler v. United States*, 62 F.3d 315, 317 (9th Cir. 1995) (citations omitted). The Internal Revenue Code provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property . . . belonging to such person." 26 U.S.C. § 6321 (1988).

Federal tax liens do not enjoy priority over all other interests automatically. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that "the first in time is the first in right." *See United States v. McDermott,* 507 U.S. 447, 449 (1993) (citations omitted). Section 6322 provides that the tax lien imposed by § 6321 "shall arise at the time the assessment is made." Pursuant to § 6322, the federal tax lien for tax years 2000 and 2001 arose against the subject property on July 28, 2003. The IRS assessed Jacobson for unpaid taxes *before* Jacobson transferred his interest in the subject property to the

OPINION AND ORDER- 9

Bergeys by estoppel deed.  Thus, the federal tax lien here is first in time under the general rule.

However, § 6323(a) states that federal tax liens are not effective against "any purchaser, holder of a security interest, . . .  or judgment lien creditor until notice thereof" has been appropriately filed.  *See McDermott,* 507 U.S. at 449; *Feiler*, 62 F.3d at 317.  Here, the United States filed notice of the federal tax lien *after* Jacobson transferred his interest in the subject property to the Bergeys by estoppel deed.  Therefore, the Bergeys contend that § 6323(a) shields them from the federal tax lien, as both "purchasers" and "holders of a security."

Under § 6323(h)(6), a "purchaser" is "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice."  The United States agrees that Jacobson "conveyed his entire interest in the property . . .  by estoppel deed to satisfy his debt to them."  There is no dispute that this debt, which arose from the Bergey Trust Deed, amounted to $47,900.  For these reasons, this court concludes as a matter of law that the Bergeys qualify as purchasers under § 6323(a), with satisfaction of the $47,900 Bergey Trust Deed obligation representing the consideration paid for the subject property.  Therefore, the court need not reach whether the Bergeys also qualify as holders of a security.

The Ninth Circuit found a federal tax lien on property invalid as against a subsequent purchaser where a reasonable and diligent search of the title index would not reveal existence of a federal tax lien, even though the purchaser had actual knowledge of the lien.  *TKB Intern., Inc. v. United States*, 995 F.2d 1460, 146-66 (9th Cir. 1993).  Here, the federal tax lien was not recorded at the time the Bergeys took the estoppel deed.  Thus, this court finds as a matter of law that the federal tax lien is invalid against the Bergeys in their capacity as purchasers, pursuant to

OPINION AND ORDER- 10

§ 6323(a).

**<u>CONCLUSION</u>**

This court finds as a matter of law that the Bergeys are entitled to all funds in the interest-bearing account, less plaintiff's attorney fees and costs if they have not already been paid. Accordingly, defendants Bruce and Carolyn Bergeys' Motion for Summary Judgment [39] is GRANTED.   Defendant United States' Motion for Summary Judgment [34] is DENIED.

IT IS SO ORDERED.

Dated this  12   day of October, 2006.

           /s/ Ancer L. Haggerty
       Ancer L. Haggerty
       United States District Judge